**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth Ray JOHNSTON,
Defendant-Appellant.**

**No. 77–1158.**

United States Court of Appeals,
Tenth Circuit.

Submitted March 13, 1978.

Decided June 16, 1978.

Stuart S. Gunckel, Denver, Colo., for defendant-appellant.

John E. Green, Acting U. S. Atty., and Ronny D. Pyle, Asst. U. S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Before HOLLOWAY, DOYLE and McKAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendants Kenneth Ray Johnston and Huey V. Griffin were indicted for bank robbery and putting in jeopardy the lives of two bank officers at the Bank of Newcastle in Newcastle, Oklahoma, in violation of 18 U.S.C. § 2113(a) and (d). A separate charge was made in count two of the same indictment that defendant Beverly Ann Popejoy did receive, relieve, comfort and assist Johnston and Griffin in order to hinder or prevent their apprehension, trial or punishment in violation of 18 U.S.C. § 3. All three defendants were convicted and Johnston and Popejoy have appealed. This opinion will treat Johnston's appeal of his conviction and sentence,[1] but because of the separate facts and issues pertinent to defendant Popejoy's appeal, a separate opinion will address her case.[2]

Defendant Johnston presents one question for appellate consideration, which he states as follows (Brief of Appellant, 1):

1. Johnston received a 17-year sentence for his conviction on count one under 18 U.S.C. § 2113(a) and (d).

2. See *United States v. Beverly Ann Popejoy*, 578 F.2d 1346 (10th Cir., No. 77–1160, filed June 16, 1978).

3. Rule 615, F.R.Evid., provides as follows:
   Exclusion of Witnesses
   At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

4. After the rule was invoked by Johnston's trial counsel the court stated (IV R. 80–81):

Where the Court sequestered the witnesses, was it prejudicial for the first witness, after testifying, to discuss his testimony with the second witness before the second witness testified?

The background for this issue is as follows. Before the trial commenced the defendant invoked the rule for exclusion of witnesses from hearing the testimony of other witnesses. See Rule 615, F.R.Evid.[3] The trial court then advised all prospective witnesses about the rule and cautioned counsel to advise their witnesses and to be careful that the rule was observed.[4]

The Government's first witness was one of the bank officers, Ben J. Bishop. He testified that the first robber was a white man, five feet eight or nine inches tall, stocky built, age 39 or 40 with dark brown hair; he was wearing a light colored short-sleeved shirt, with no coat or tie; he was carrying a revolver; and he was the shorter of the two robbers. Bishop identified Johnston as that man. (IV R., 89–92, 104, 115–119).

The Government's second witness was also a bank officer, Robert Jacobs. He testified that he could not identify the first robber. He said the first robber was carrying a revolver, he had large eyes, he was

THE COURT: All right. The Rule has been invoked. It is an appropriate rule. The Court will so invoke it. The Rule is that any person who expects to be a witness in this case must be outside of the courtroom during the course of the trial and in the courtroom only, and only at such time as may be called to testify in the witness stand. All of you ladies and gentlemen that are here expecting to be witnesses will be excused from the courtroom during the course of the trial. Counsel should advise all of your witnesses that the Rule has been invoked and be careful that any witnesses that you may have called to testify are, in fact, excluded from the courtroom.
MR. RUSSELL: Your Honor, may we except Agent Hawkins from that rule?
THE COURT: Agent Hawkins may be excepted from the Rule.
You may bring the jury in.

under six feet tall, he was the shorter of the two robbers, and he had light-colored sandy hair. (Id. at 130–34, 148–150, 157).

After Jacobs gave his direct testimony and his cross-examination by the two other defendants on trial, Jacobs was cross-examined by defendant Johnston's counsel. It was then established that Jacobs and Bishop had discussed Bishop's testimony after Bishop left the stand and immediately before Jacobs's testimony. This conversation took place "down the hall a ways," at which time Bishop told Jacobs part of what he had said on the stand. (Id. at 158–59).

Counsel asked that Jacobs's testimony be excluded and that the jury be admonished that they may not consider his testimony. He argued that the rule of sequestration requires not only that the witnesses not be permitted in the courtroom, but also that they not discuss their testimony with one another. The court denied the motion, noting that the court did not advise the witnesses that they should not discuss their testimony among themselves, although it would have so advised had the request been made. The court further noted that it had observed this testimony and concluded that the testimony of this witness did not appear affected by this conversation. (Id. at 159–60).

On appeal, defendant Johnston argues that there was prejudice to him at trial by the admission of Jacobs's testimony after the discussion between Bishop and Jacobs which was "in violation of the court's order excluding and sequestering witnesses. . . ." (Brief of Appellant, 4). More specifically Johnston says that his identification was a critical issue, that since Jacobs could not identify him the identification rested solely on the testimony of Bishop unless it was contradicted by Jacobs, that Jacobs and Bishop were standing side-by-side and yet Bishop claimed to be able to identify Johnston while Jacobs could not do so, although he looked the first suspect in the eye.

Further, Johnston contends that nevertheless Jacobs then corroborated Bishop's description of the first suspect as to height and being shorter than the second man and as to his sandy hair.[5] Johnston says, however, that Jacobs had given descriptions to the F.B.I. immediately after the robbery and that the descriptions given to F.B.I. Agent George were not the same as those given in court. (Brief of Appellant, 5).[6] Johnston argues there were contradictions in Bishop's position by describing the first suspect as five feet six inches tall with light sandy hair and as shorter than the second man, while Bishop had told F.B.I. agent George that the first man was the taller and that the second man had light brown hair. (VI R. 477–78). Johnston concludes that after Jacobs learned of Bishop's courtroom identification, Jacobs then changed his descriptions of the suspects and testified in a way so as to avoid contradicting Bishop's in-court identification of Johnston. (Brief of Appellant, 5–6). Reliance is placed, *inter alia*, on *Taylor v. United*

---

5. Defendant Johnston argues that Jacobs corroborated Bishop's testimony, among other things, on the point that the first robber had "light, sandy hair . . ." (Brief of Appellant, 5). However, Bishop did not thus describe the first robber's hair color which he instead said was "dark hair, dark brownish hair." (IV R. 118). Jacobs testified that the first robber's hair was "light colored, sandy hair." (Id. at 148).

6. During his cross-examination Jacobs was shown an F.B.I. summation and then asked if he had ever stated the facts about the height of the two robbers differently (*i. e.,* whether he had earlier said that the first robber was taller than the second one). He acknowledged that

the F.B.I. summary so indicated: "Perhaps I did, it's written right there, I mean, I might have at that particular time. This I couldn't say for sure. I always thought that I told them that it was the first male that came in the bank was the one that was the shorter of the two." (IV R. 149).

Earlier in his brief Johnston states that Agent George testified that Jacobs had told him that the first man was the taller of the two and that it was the second man who had light brown, sandy hair, citing Tr. VI, 478. (See Brief of Appellant, 2–3). However, this portion of the actual testimony of Agent George related the oral statement of witness Bishop, not witness Jacobs. (See VI R. 477–78).

*States*, 388 F.2d 786 (9th Cir.), *United States v. Littwin*, 338 F.2d 141 (6th Cir.), and *Beddow v. State*, 39 Ala.App. 29, 96 So.2d 175.

■ The exclusion of witnesses from the courtroom during trial is a time-honored practice designed to prevent the shaping of testimony by hearing what other witnesses say. *Taylor v. United States, supra,* 388 F.2d at 788. The importance of the rule was emphasized anew by its reaffirmation in Rule 615 of the Federal Rules of Evidence. Rule 615 changes the law and now makes exclusion demandable by a litigant as of right, instead of being merely discretionary with the trial court, 3 Weinstein's Evidence 615–6, with stated exceptions as to certain persons. Moreover a circumvention of the rule does occur where witnesses indirectly defeat its purpose by discussing testimony they have given and events in the courtroom with other witnesses who are to testify. See *United States v. Littwin, supra,* 338 F.2d at 144.[7] This should be avoided by instructions to counsel and the witnesses when the rule's invocation is announced, making it clear that witnesses are not only excluded from the courtroom but also that they are not to relate to other witnesses what their testimony has been and what occurred in the courtroom.[8]

The trial judge in the instant case pointed out that he would have given such an instruction if it had been requested. And the court did, at the point when the motion to exclude Jacobs's testimony was denied, suggest to counsel that they inform their witnesses thereafter not to discuss among themselves the testimony given on the stand. (IV R. 160). Further, as noted, the trial judge said he had observed the testi-

mony and that it would not appear to the court that the testimony of Jacobs had been affected by the conversation.

Our question is whether there was error in not excluding the testimony of Jacobs. The consequence of a violation of the rule was discussed in *Holder v. United States,* 150 U.S. 91, 92, 14 S.Ct. 10, 37 L.Ed. 1010:

> If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt, and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground, merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court.

■ In *Holder* the Court held there was no error in not excluding the testimony of a witness violating the rule in a murder trial. The test is whether permitting the witness to testify, despite his violation of the rule, is an abuse of the trial court's discretion. *Taylor v. United States, supra,* 388 F.2d at 788–89. *United States v. Littwin, supra,* 338 F.2d at 144.

■ Considering this record as a whole, we are satisfied there was no abuse of discretion in refusing to exclude Jacobs's testimony. There is no indication at all in the record that Government counsel intentionally permitted disregard of the rule. *United States v. Sluder,* 457 F.2d 703, 711 (10th Cir.); see *United States v. Littwin, supra,* 338 F.2d at 144. While we have noted the admission by Jacobs of some variance in his testimony from the F.B.I. summary of his earlier statement,[9] the trial

7. The *Littwin* opinion does not detail the instructions given to witnesses and counsel when the rule was invoked. It seems to assume, however, that there was a violation of the rule separating witnesses by such discussion of their testimony among witnesses who had testified and those who were still to testify. 338 F.2d at 144.

8. For statements that such precautions should be taken see *Gregory v. United States,* 125 U.S.App.D.C. 140, 147, 369 F.2d 185, 192, cert.

denied, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119; *Milanovich v. United States,* 275 F.2d 716, 720 (4th Cir.), aff'd in part and rev'd in part on other grounds, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773.

9. See note 6, supra. Discrepancies were also shown between the statements by Bishop to F.B.I. Agent George and Bishop's trial descriptions of the two robbers as to height and hair color. (IV R. 92, 118; VI R. 477–78).

judge observed that it did not appear that Jacobs's testimony was affected by the conversation. Moreover there was no showing as to what testimony was actually discussed by Bishop and Jacobs. *United States v. Littwin, supra,* 338 F.2d at 144. We cannot say that the circumvention of the rule has so discredited the witness as to render his testimony incredible as a matter of law. See *Taylor v. United States, supra,* 388 F.2d at 788.

We find no error in the rulings of the trial court which are challenged and see no merit in the contentions made. Accordingly, the judgment is

AFFIRMED.